ALEXANDER S. TURNER, Respondent, *v.* WILLIAM W. WESTON *et al.*, Appellants.

*Court of Appeals, May 24, 1892.*

1. *Appeal. Question of Law.*—An exception is essential to enable an appellant to raise, in the court of appeals, the question that any finding of fact is unsupported by the evidence.

2. *Same.*—The exceptions in form should be directed at some distinct and separate proposition found by the referee or court, or at some part of it, in such a way as to enable the appellate court to understand clearly what particular fact found is challenged.

3. *Accounting. Joint Enterprise.*—Where, in an action for an accounting between parties engaged in a joint enterprise, the defendants claimed on the trial an amount to be due to them on an individual account between them and the plaintiff, not connected with the joint enterprise, but the matter was not pleaded as a counterclaim, nor any mention thereof was made in the answer, though some evidence was given thereon incidently, but not with a view of asserting it by way of defense, the refusal of the referee to make any findings in regard thereto was held not to be error.

4. *Same.*—The rights and obligations of the parties to a joint enterprise are to be determined and adjusted upon the rules and principles applicable to partnership transactions.

Appeal from judgment of the supreme court, general term, fifth department, affirming judgment in favor of plaintiff against defendants, entered upon the report of a referee.

*D. H. Bolles*, for appellants.

*Roswell R. Moss*, for respondent.

O'BRIEN, J.—The appeal book in this case contains the record of a long and expensive litigation, important to the parties on account of the large amount involved, but which,

in the end, turned almost entirely upon the disposition of questions of fact. Those questions seem to have received careful consideration, in the first instance from the learned referee who tried the cause, and subsequently at the general term. The evidence was conflicting, and the findings of fact sustain the legal conclusions upon which the judgment is based. The powers of this court in such a case are limited to a review of questions of law raised by proper exceptions to some decision or ruling at the trial.

It is quite doubtful whether the record presents any question for this court except the sufficiency of the findings of fact to support the legal conclusions. There is no statement that the case contains all the evidence, and it is claimed that there is no proper exception to any finding of fact. The latter, at least, is essential to enable the defendants to raise the question of law here that any of the findings are unsupported by evidence. Porter *v.* Smith, 107 N. Y. 531; Brayton *v.* Sherman, 119 N. Y. 623; Aldridge *v.* Aldridge, 120 N. Y. 614; Travis *v.* Travis, 122 N. Y. 449.

Exceptions appear in the case to the referee's report, which were filed, but they are aimed at his legal conclusions, although there is blended with some of them matters of fact and argument. It is exceedingly difficult to say just what propositions of fact found by the referee it was intended to question. Without holding now that the defendant is precluded in this court from raising the question that any of the findings are without evidence to support them, it is proper to suggest that this practice is not to be encouraged. The exceptions in form should be directed at some distinct and separate proposition found by the referee or court, or at some part of it, in such a way as to enable the appellate court to understand clearly what particular fact found is challenged. Daniels *v.* Smith, 130 N. Y. 696.

In August, 1863, the plaintiff and one Ross, and the defendants, who were partners, became the owners of a large tract of timber land in Pennsylvania from which logs and

timber could be floated down the Allegany river to the defendants' saw mills in this state. The plaintiff and Ross acquired the one-half interest in the lands and the defendants, as partners, the other half. The respective owners then agreed that the defendants should cut the timber, drive it to their mills, and there manufacture it into timber and shingles, sort, pile and properly care for the same in order to prepare it for market and then to sell it. They were to superintend the work in all its parts and the sales for the best interest of all interested, and for manufacturing the lumber and shingles were to charge and receive what their services were reasonably worth at the time. The plaintiff and his partner were to bear one-half of the cost of producing the lumber and the defendants the balance. The net profits derived from the sale of the lumber and shingles were to be divided equally between the defendants' firm and the plaintiff's. The defendants immediately entered upon the performance of this agreement and continued in its performance, rendering to the plaintiff and Ross a statement each year of the expenses and sales. In the year 1869 the plaintiff by transfer from Ross became the sole owner of the one-half interest. In the original agreement the parties had designated their joint enterprise and business by the term "5 Lumber," and after the transfer by Ross to the plaintiff the business was conducted under the same name and in the same way, except that the annual statements were made out and delivered to the plaintiff until about the year 1878, when the business was substantially finished. The plaintiff claimed that since 1869 a large amount of the lumber and shingles produced from the land and which was the joint property of the parties, had not been accounted for by the defendants, and brought this action to dissolve the partnership and for an accounting. The answer puts in issue all the allegations of the complaint in regard to a failure on the part of the defendants to account for the proceeds of the undertaking, and also demands that an accounting be had.

Besides the facts already stated, the referee found that the total amount of pine lumber taken from the tract since 1869 and manufactured, and for the manufacture of which the defendants had charged and had been allowed, was 31,625,-284 feet, and the total amount sold by them, and for which they had rendered an account to the joint concern, was 24,-832,097 feet. That the amount on hand unsold was 92,655 feet, leaving a deficiency between the amount manufactured and the amount accounted for as sold and on hand of 6,700,-530 feet. That the natural and ordinary waste and shrinkage arising from defective logs, breakage, errors in measurements and inaccurate accounts rendered by the sawyers and from all other causes, naturally and usually incident to the manufacture, shipping and sale of such lumber, did not exceed 3,700,530 feet, and that the defendents had received and appropriated the balance of 3,000,000 feet or had the benefit thereof and were chargeable with its value found, to be $20.14 per thousand feet. There is no dispute as to the discrepancy above stated between the defendants' statements of charges for lumber sawed or manufactured and for lumber sold and credited. The substantial element of the controversy was whether these facts and the other facts established, proved, or tended to prove, that the defendants were liable for the deficiency, if such in fact existed. The referee held that the defendants should be charged in the accounting with this deficiency. The judgment is made up of this large item and three smaller ones as to which there is really no dispute, namely, shingles, hardwood lumber and a balance received from the sale of a small parcel of the land. None of the numerous exceptions taken during the progress of the trial have been argued and the requests referred to, so far as they were material and refused by the referee, were not predicated upon testimony that can be said to be without conflict, and hence they present no question here. The argument of the learned counsel for the defendants is directed substantially to three propositions, which will be briefly noticed.

1. He contends that the evidence did not warrant the finding that the defendants had appropriated to their own use three million feet of pine lumber. If it had been shown that any part of the lumber produced from the tract had been distroyed, lost or stolen, the question then might arise as to how far the defendants were liable for it, but as no question of that kind is raised or suggested we cannot perceive how it is material to determine the degree of care which the defendants were bound to exercise or the degree of negligence for which they might in such case be responsible. The defendants were held liable upon the theory that they had received the lumber themselves, and the proceeds thereof went into their business, and they had the benefit of it. It is not material whether this resulted from design or otherwise, though the referee in his opinion shows how it might have and probably did occur without any dishonesty on the part of the defendants. The logs and lumber were mingled with other logs and lumber and the accounts were kept in such a way that mistakes probably occurred which, in such a large business as the defendants were transacting, during so many years, might account for the deficiency. However that may be, the evidence of the discrepancy, as to which there was no dispute, followed by the testimony of expert and other witnesses as to what percentage of the bills for sawing should be deducted on account of waste, breakage and the other causes mentioned, in order to determine the true amount of merchantable lumber, with the other facts and circumstances shown, was sufficient to warrant the findings. Prior to 1869, the difference between the bills for manufacturing and the statement of sales was comparatively trifling. How far that was due to a difference in the quality of the timber was for the referee to decide in giving the circumstance proper weight. But he could avail himself not only of the experience of six years of this same business but the experience of witnesses generally familiar with the subject. It would, we think, be impossible to hold that

this feature of the case presented a question of law. It was essentially one of fact. It is not important to define the precise legal relations which the plaintiff and defendants sustained to each other in the business. If not strictly a partnership, it was certainly a joint enterprise, and the rights and obligations of the parties are to be determined and adjusted upon the rules and principles applicable to partnership transactions.

2. It is urged that the referee erred in refusing to allow an account of some $17,000 claimed to be due by the plaintiff to the defendants. The referee made no finding in regard to it, and the only question here is whether it was error in refusing to find upon that subject. It was not claimed that this account, whatever its nature or amount, constituted any part of the assets of the joint concern. It was an individual claim of the defendants. It was not pleaded as a counterclaim, and no mention is made of it in the answer. There is some proof in the record in regard to it, but it seems to have come in incidentally and not with a view of asserting it by way of defense in this action, as is to be inferred from the opinion of the referee. The defendants can maintain an action upon this claim, and it appears, from the briefs submitted that one is now pending to offset the amount of it against the judgment in this case. As the judgment of the referee should have been and was rendered *secundum allegata et probata*, we do not think his refusal to find with respect to this individual claim was error.

3. In the accounting the referee credited the joint concern with $38,648.76, the value of a large quantity of pine lumber which belonged to it. The defendants claim that it was sold to them by the plaintiff for $33,117.01, and they credited that amount to the concern, and it is urged that the referee erred in allowing more. The evidence on this question was substantially this. In 1877, and after the plaintiff had made a claim on account of the deficiency, there was a large amount of lumber on hand. By consent of the parties

its amount and value were determined by two men selected for that purpose. Subsequently negotiations passed between them for a sale of the lumber, and at the request of the plaintiff the defendants submitted to him figures representing the price they would give or take, which were considerably less than the value as fixed by the two persons selected.

The defendants, without the plaintiff's consent, appropriated the lumber as their own, and credited it at the figures they had submitted to the plaintiff. The plaintiff had, prior to this time, notified the defendants that he was not able to purchase so large an amount of lumber, and the referee has found, upon sufficient evidence, that the plaintiff never assented to a sale or appropriation by the defendants of the lumber at the price credited, and he charged them with what he found to be its value upon the evidence. The offer of the defendants not having been accepted by the plaintiff, but in fact refused, no contract of sale was consummated. There is no ground upon which we can disturb the finding on this branch of the case.

The judgment should be affirmed, with costs.

All concur.

---

NOTE.

As to findings of fact unsupported by the evidence, see *Healy v. Clark,* 120 N. Y. 642; *Kennedy v. Porter,* 109 Id. 526.

o